# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DONALD TAYLOR, | ) | CASE NO. 4:09-cv-02892 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| KEITH SMITH, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Donald Taylor ("Taylor"), challenges the constitutionality of his conviction in the case of *State v. Taylor*, Mahoning County Court of Common Pleas Case No. 05-CR-241. Taylor, *pro se*, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on December 14, 2009.  On March 17, 2010, Warden Keith Smith ("Respondent") filed his Answer/Return of Writ.  (Doc. No. 8.)  Taylor did not file a Traverse.  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Taylor's petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Taylor's conviction as follows:

[*P3]  On February 18, 2005, a six-year-old female reported that appellant raped her. On March 17, 2005, appellant was indicted on three counts plus a violent sexual predator specification due to prior sexual offenses. Count one charged forcible rape of a child under ten, which is a felony-life offense under R.C. 2907.02(A)(1)(b) and (B).  Count two charged kidnapping in violation of R.C. 2905.01(A)(4), which entails using force, threat or deception, or any means where the victim is under thirteen, to remove another from the place where found or to restrain the liberty of another, for the purpose of engaging in sexual activity against the victim's will.  A count of gross sexual imposition was included only as a lesser included offense of rape.

[*P4]  A bench trial was conducted on June 7, 2007.  It was established that on the date of the offense, the child lived in a duplex with her four-year-old brother and her mother on Bryson Avenue in Youngstown, Ohio.  Appellant had recently moved into the apartment upstairs with his son and his son's girlfriend.  The children often visited the upstairs apartment.

[*P5]  The victim testified that she was upstairs with appellant and her brother. When her brother went back downstairs to their apartment, appellant locked the door of his apartment and pulled down her pants. She tried to get away, but he threw her on the couch (which served as his bed).  (Tr. 20).  He pulled down her pants. She tried to scream, but he put his hand over her mouth.  (Tr. 21).

[*P6]  She testified that he "put his pee-pee in my private" and further explained that she was on her back and it was her "front" private that he put his "pee-pee" "inside".  (Tr. 19, 22-23). The victim disclosed that her "private" hurt after the incident.  (Tr. 22-23).  She stated that she ran downstairs, locked their apartment door and told her mother.  (Tr. 23).

[*P7]  The victim's mother testified that appellant had asked if the children could come upstairs and watch cartoons.  (Tr. 123).  She stated that after twenty or thirty minutes, the victim ran downstairs crying, slammed and locked the door and reported that appellant "touched her coochie."  (Tr. 106-107, 122).  The mother checked the child and found that her vaginal area was swollen and bloody. (Tr. 107).  The mother pointed out that appellant appeared downstairs right after this and blurted out that the child was lying, although no one had yet confronted him.  (Tr. 108).

[*P8]  Within minutes, appellant's son's girlfriend came home.  She also heard the child's allegation, checked the child and noticed that her vaginal area was red and swollen.  (Tr. 108, 209-210).  The police were called and arrived shortly after 6:00 p.m.  (Tr. 40, 213).  The police called an ambulance to transport the child to the emergency room.  (Tr. 41).

-2-

[*P9]  The pediatric emergency physician testified that the child informed him the upstairs neighbor put his "pee-pee" in her private area and complained of soreness in the vaginal area.  (Tr. 136, 139).  He noticed a one inch round spot of redness on the right side of the outside of the vaginal opening but just inside the labia, which he found indicated a recent trauma.  (Tr. 136, 140-141).

[*P10]  Although the physician did not notice any bleeding, the vaginal swab from his rape kit tested positive for blood.  (Tr. 137, 140, 146).  The vaginal swab tested negative for the presence of seminal fluid, but a rectal area swab and an underwear swatch tested positive for seminal fluid.  (Tr. 146).  The DNA retrieved from the underwear sample was consistent with appellant's DNA, and the DNA in the seminal fluid retrieved from rectal area swab was consistent with a mix of appellant's and the child's DNA.  (Tr. 158).

[*P11]  A nurse practitioner, who works with child abuse victims and who examined the victim eleven days after the incident, testified that the victim informed her that when appellant "put his pee-pee in her pee-pee", it hurt, then it was wet and then there was some bleeding.  (Tr. 96).  The nurse explained that the hymen commonly does not tear in child abuse penetration cases as it is very elastic in children.  (Tr. 97-98).

 [*P12]  Appellant's brother attempted to provide an alibi.  He described appellant as mentally "slow".  He testified that appellant arrived at his house at noon and was not dropped back off on Bryson until after 7:30 p.m.  (Tr. 180-181).  He stated that appellant called him around 9:00 p.m. to tell him that the police were there because the children had come up to his apartment.  (Tr. 182).  He could not explain the time recorded in the hospital's records but argued that the police must be wrong in their time and date because they probably wrote the report days later.  He also insisted that this all occurred on Valentine's Day.  (Tr. 191-192).

[*P13]  Appellant then took the stand.  He estimated that he was in his thirties; however, he provided a 1957 date of birth and then agreed that he was nearly fifty. (Tr. 222-223).  He reiterated his brother's testimony that he was with his brother from noon until nearly 8:00 p.m.  (Tr. 228-229).  He testified that he was lying on the couch when the children came upstairs.  He said the female child hit him in the head with a bat so he took them downstairs to their mother.  (Tr. 231).  He denied that he touched the victim.  (Tr. 238).  He explained the forensic results inside the victim's underwear by claiming that he had sex with his estranged wife on the couch the night before.  (Tr. 236).  He also testified that the child's mother asked him for $100, got angry when he would not pay her and threatened to call the police regarding this case.  (Tr.234-235).

[*P14]  The court found appellant guilty of rape and kidnapping, and the lesser included offense of gross sexual imposition was dismissed.  The sentencing

hearing was held on June 15, 2007.  Appellant was sentenced to life without parole for the rape to be served consecutive to a ten-year sentence imposed for the kidnapping.  The court also found that appellant was a violent sexual predator under R.C. 2950.09.

*State v. Taylor*, 2009 Ohio App. LEXIS 2840, 2009-Ohio-3334 ¶¶3-14 (Ohio Ct. App., June 26, 2009).

## II.  Procedural History

### A.    Conviction

On March 17, 2005, a Mahoning County Grand Jury charged Taylor with one count of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(1)(b)(B), one count of kidnapping in violation of O.R.C. § 2905.01(A)(4)(C), and one count of gross sexual imposition in violation of O.R.C. § 2907.05(A)(4)(B), together with a sexually violent predator specification pursuant to O.R.C. § 2941.14.8.  (Doc. No. 8, Exh. 1.)  Taylor pled "Not Guilty" by reason of insanity, however, on June 14, 2006, the parties stipulated to Taylor's competency.  (Doc. No. 8, Exhs. 2 & 4.)  On June 11, 2007, after a bench trial, Taylor was found guilty of rape and kidnapping.  The court dismissed the charge of gross sexual imposition, finding it constituted a lesser included offense to the rape charge.  (Doc. No. 8, Exh. 6.)  On August 13, 2007, Taylor was sentenced to consecutive prison terms of life without parole for rape and ten years for kidnapping.  (Doc. No. 8, Exh. 7.)  Taylor was also designated as a sexual predator.  *Id*.

### B.    Direct Appeal

On July 11, 2007, Taylor, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Seventh Appellate District ("state appellate court").  (Doc. No. 8, Exh. 8.)  He raised the following assignments of error:

1.    The appellant was denied effective assistance of counsel as guaranteed by

-4-

the Sixth Amendment to the United States Constitution when appellant's trial counsel failed to argue appellant's convictions for rape and kidnapping were allied offenses of similar import.

2.  The trial court denied appellant due process under the Fourteenth Amendment due to the fact his conviction for rape [was] against the manifest weight of the evidence and the trial court's verdict was inconsistent with the evidence and testimony presented at trial.

(Doc. No. 8, Exh. 9.)  On June 26, 2009, the state appellate court affirmed Taylor's conviction.

(Doc. No. 8, Exh. 11.)

On August 3, 2009, Taylor filed a Notice of Appeal with the Supreme Court of Ohio and

raised the following propositions of law:

1.  The appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution when appellant's trial counsel failed to argue appellant's convictions for rape and kidnapping were allied offenses of similar import.

2.  The trial court and the Seventh District Court of Appeals denied appellant due process under the Fourteenth Amendment due to the fact his conviction for rape [was] against the manifest weight of the evidence and the trial court's verdict was inconsistent with the evidence and testimony presented at trial.

(Doc. No. 8, Exhs. 12 & 13.)

On November 4, 2009, the appeal was dismissed as not involving any substantial

constitutional question.  (Doc. No. 8, Exh. 14.)

**C.  Federal Habeas Petition**

On December 14, 2009, Taylor filed a Petition for Writ of Habeas Corpus and asserted

the following grounds for relief:

GROUND ONE: Petitioner was denied the right to Effective Assistance of Counsel when counsel failed to raise at trial Petitioner's rightful entitlement for a voir dire hearing prior to sentencing on rape and kidnapping when he received consecutive sentences and R.C. 2941.25 requires such voir dire be conducted to

-5-

determine similar or dissimilar imports.

GROUND TWO: Petitioner was denied his Right to Due Process when the facts surrounding his conviction were clearly against the Manifest Weight of the Evidence.

(Doc. No. 1.)

### III.  Review on the Merits[1]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d

---

[1]  Respondent raised a procedural default argument with respect to ground one. However, as both grounds are easily decided on the merits, the Court shall forego a procedural default analysis.  The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case.  *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).

1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not

mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent"

also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v.*

*Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's

decision involves an unreasonable application of clearly established federal law "if the state

court identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  However, a federal

district court may not find a state court's decision unreasonable "simply because that court

concludes in its independent judgment that the relevant state court decision applied clearly

established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court

must determine whether the state court's decision constituted an objectively unreasonable

application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts

defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006)

(*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Ground One: Ineffective Assistance of Counsel**

Taylor contends that he was denied his right to effective assistance of counsel, because

counsel failed to seek a *voir dire* hearing required by O.R.C. § 2941.25 prior to sentencing.

(Doc. No. 1.)  Respondent asserts that neither O.R.C. § 2941.25 nor any other provision of Ohio

law requires a *voir dire* hearing prior to sentencing for multiple convictions.  (Doc. No. 8 at 10.)

Therefore, Respondent argues that trial counsel cannot be deemed ineffective for failing to

request a hearing not required by law.  *Id*.  O.R.C. § 2941.25 reads as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or
> more allied offenses of similar import, the indictment or information may contain
> counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar
> import, or where his conduct results in two or more offenses of the same or
> similar kind committed separately or with a separate animus as to each, the
> indictment or information may contain counts for all such offenses, and the
> defendant may be convicted of all of them.

Nothing in this statute suggests that Taylor had a right to seek a *voir dire* hearing.  Taylor

does not cite any other law suggesting as much and this Court's own research has not uncovered

any law to support Taylor's position.  However, Taylor's argument appears to be very similar to

one raised by his appellate counsel.  Before the state courts, Taylor had argued that his trial

counsel was ineffective for failing to argue that his convictions for rape and kidnapping were

allied offenses of similar import.  (Doc. No. 8, Exh. 9.)  Taylor's pleadings must be given the

liberal construction appropriate for a *pro se* litigant.  *See e.g., Haines v. Kerner*, 404 U.S. 519,

520 (1972) (*per curiam*) (holding a *pro se* complaint "to less stringent standards than formal

pleadings drafted by lawyers"); *see also Burris v. United States*, 430 F.2d 399, 402 (7th Cir.

1970), *cert. denied*, 401 U.S. 921 (1971) (The allegations of a *pro se* habeas petition, "though

vague and conclusory, are entitled to a liberal construction."); *White v. Wyrick*, 530 F.2d 818,

819 (8th Cir. 1976) ("[P]etitioner appears *pro se* and is entitled to have his pleadings interpreted

liberally and his petition should be construed to encompass any allegation stating federal relief.")

As such, the Court will address whether counsel was constitutionally ineffective for failing to

-8-

seek the merger of his convictions for rape and kidnapping.

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The state appellate court, in addressing Taylor's ineffective assistance of counsel claim, accurately identified the *Strickland* two-part test as controlling.  After a lengthy analysis of state law concerning the circumstances under which merger of offenses for sentencing is required and

a review of the relevant facts, the state appellate court concluded that the rape and kidnapping convictions each had a separate animus and merger was not required. *Taylor*, 2009-Ohio-3334 at ¶¶18-38.  Consequently, the court concluded that trial counsel's failure to raise the merger issue at sentencing did not constitute ineffective assistance, as there was no reasonable probability that counsel's alleged errors would have changed the outcome. *Id*.  As this Court cannot challenge a state court's interpretation of state law and the appellate court reasonably applied clearly established federal law, Taylor's first ground for relief is without merit.

**B. Ground Two: Manifest Weight of the Evidence**

Taylor asserts that his conviction was against the manifest weight of the evidence. Manifest weight claims are not cognizable on federal habeas review. *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin*, 2006 WL 2090093 at *6 (S.D. Ohio 2006).  As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin*, , 2006 WL 2090093 at *7 (S.D. Ohio 2006) *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983).[2]  Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court

---

[2]  Taylor's petition does not raise a sufficiency of the evidence claim, nor did he file a traverse.

cannot consider whether Taylor's conviction was against the manifest weight of the evidence. *Id.*

Nonetheless, given that *pro se* habeas petitions are entitled to a liberal construction, that Taylor raised a sufficiency of the evidence argument on direct appeal, that the state appellate court addressed Taylor's sufficiency argument, and that Respondent's Answer/Return of Writ addresses ground two as if raising a sufficiency claim, the Court finds it necessary to consider a sufficiency argument on its merits.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *Id.*; *see also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

With respect to Taylor's sufficiency of the evidence argument, the state appellate court

found as follows:

[*P41]  This assignment of error deals only with the rape conviction.  Appellant argues there is no evidence of penetration and then points out perceived inconsistencies in certain testimony.  Appellant speaks mostly of weight of the evidence.  However, he quotes a passage from *Jenks* that the same test applies to weight and sufficiency, and he makes some statements regarding sufficiency of the evidence.

[*P42]  As we have stated multiple times, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541 clearly established that sufficiency of the evidence and weight of the evidence are distinct concepts with different definitions and different tests.  *See, e.g., State v. Alicea*, 7th Dist. No. 99CA36, 2002 Ohio 6907, P26; *State v. Griffin*, 7th Dist. No. 01CA151, 2002 Ohio 6900, P18.  Contrary to appellant's brief, the *Jenks* holding that weight and sufficiency use the same test is no longer of precedential value.  *State v. Cuthbertson*, 7th Dist. No. 01CA212, 2003 Ohio 1217, P7 (specifying how this portion of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492 is no longer good law).

[*P43]  Sufficiency of the evidence is a question of law that deals with adequacy rather than the more discretionary concept of weight of the evidence.  *Thompkins*, 78 Ohio St.3d at 386.  In viewing a sufficiency of the evidence argument, a conviction will not be reversed unless the reviewing court determines that no rational fact-finder could have found that the elements of the offense were proven beyond a reasonable doubt.  *State v. Goff* (1998), 82 Ohio St.3d 123, 138, 1998 Ohio 369, 694 N.E.2d 916.  In conducting this review, we evaluate the evidence in the light most favorable to the prosecution.  *Id.*

[*P44]  Rape involves sexual conduct, which is specifically defined as including insertion, however slight, of any part of the body or any object into the vaginal or anal opening of another. R.C. 2907.02(A).  The statute reiterates that penetration, however slight, is sufficient to complete vaginal or anal intercourse.  *Id.*

[*P45]  The child was six years old at the time of the incident.  Appellant was the child's upstairs neighbor.  She had been to his apartment before, and he admits that she was there on February 18, 2005.  The child testified that appellant locked the door, pulled down his and then her pants, threw her on the couch when she tried to get away, and put his hand over her mouth when she tried to scream.  She then said that he "put his pee-pee in my private", and she complained that her "private" hurt thereafter.  (Tr. 19, 22-23.)  Upon further questioning, she confirmed that he put his "pee-pee" "inside" her private.  (Tr. 23.)  There was no indication that she meant on or around the outside, and insertion is penetration, however slight.  That the red, swollen spot visible to the physician was outside the vaginal opening does not mean that appellant's penis did not achieve penetration.

In fact, the location on the inside of the labia right outside the opening could lead one to reasonably infer that an object made this mark on its way into and out of the opening.

[*P46]  As the nurse disclosed, an uninjured hymen after penetration of a child occurs more often than an injured hymen.  Moreover, blood was found on the victim's vaginal swab, and seminal fluid was found on her rectal area and in her underwear.  Appellant's DNA was found to be consistent with this seminal fluid. There is other evidence against appellant that will be discussed in evaluating the weight of the evidence, but we stop here to say that this is more than sufficient evidence to uphold a conviction of forcible rape of a child under ten.  In other words, some reasonable trier of fact could find beyond a reasonable doubt that he forcibly penetrated this child's vaginal opening.

*Taylor*, 2009-Ohio-3334 at ¶¶41-46.

Based on this Court's own review of the trial transcript, it is clear that the state appellate court accurately summarized the evidence of record and correctly identified the applicable law. (Tr. 18-23, 67-68, 83-88, 95-100, 136-39, 142-47, 152-62.)  Certainly, when viewing the evidence in the light most favorable to the prosecution, a reasonable jury could have found Taylor guilty of both rape and kidnapping.  As such, this Court finds that the state appellate court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.  Taylor's second ground for relief is, therefore, without merit.

### IV.  Conclusion

For the foregoing reasons, it is recommended that Taylor's Petition be DENIED.

s/ Greg White
U.S. MAGISTRATE JUDGE

Date: June 21, 2010

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).